FILED'10 JAN 08 16:09usDC-ORP

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

DOUGLAS RIDGE RIFLE CLUB,  CV. 08-29-AC

        Plaintiff,  OPINION AND ORDER

    v.

ST. PAUL FIRE & MARINE INSURANCE CO.,

        Defendant.

ACOSTA, Magistrate Judge:

*Opinion*

    Plaintiff Douglas Ridge Rifle Club ("Douglas Ridge") filed this action for breach of contract and declaratory judgment asking the court to order defendant St. Paul Fire & Marine Insurance Co. ("St. Paul") to provide a defense to the complaint filed against it by John Benjamin. Both parties have moved for summary judgment on the issue of St. Paul's duty to defend. The court finds that the allegations of both the Second and Third Claim for Relief in the underlying complaint may be

construed to allege claims that are covered by the relevant insurance policies and that trigger St. Paul's duty to defend under those policies. Plaintiff is entitled to partial summary judgment. St. Paul's motion for summary judgment is denied.

*Background*

In 1956, Douglas Ridge opened its doors as an outdoor shooting range on property located in Eagle Creek, Oregon (the "Property"). (Pate Decl. ¶ 2.) Douglas Ridge offers its members six separate shooting ranges and courses in hunting and marksmanship. (Pate Decl. ¶ 3.) Douglas Ridge purchased its property liability insurance from St. Paul continuously over the period between 1956 and 1980, with the exception of August 1978 to August 1979. (Stipulation Re: Insurance Policies, Exh. B.) The policy in effect from August 1957 to August 1958 (the "Policy") provided, in pertinent part, that:

> In consideration of the payment of the premium . . . St. Paul Fire & Marine Insurance Company (herein called the Company) AGREES with the Insured . . .
>
> **Coverage B – Property Damage Liability**
> To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the hazards hereinafter defined.
>
> **Definition of Hazards**
>
> **Division 1 – Premises – Operations**
> The ownership, maintenance or use of the premises, and all operations necessary or incidental thereto.
>
> . . .
>
> **II. Defense, Settlement, Supplementary Payments**
> With respect to such insurance as is afforded by this policy . . . for property damage liability, the Company shall:
>
> (a) defend any suit against the Insured alleging such injury, sickness, disease

or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent[.]

. . .

**VII. Policy Period, Territory**

This policy applies only to accidents which occur during the policy period[.]

### EXCLUSIONS

This Policy does not apply:

. . .

(k) under Coverage[] B[,] to injury to or destruction of . . . property owned or occupied by or rented to the Insured[.]

(Stipulation Re: Insurance Policies, Exh. B.) The parties agree that the language from the Policy governs this dispute.[1]

On August 3, 2007, John Benjamin filed a citizen suit in this court against Douglas Ridge asserting claims for violations of the Clean Water Act and the Resource Conservation and Recovery Act, as well as a claim for public nuisance (the "*Benjamin* Complaint"). Benjamin asserts that Douglas Ridge's actions have "adversely affected plaintiff's ability to use and enjoy the Clackamas River for swimming, fishing and boating." (*Benjamin* Compl. ¶ 6.)

Benjamin generally alleges that "hundreds of thousands of pounds of lead have been discharged, disposed of, and abandoned in the ground, water, and wetlands at and around the [Property] in violation of federal and state environmental laws." (*Benjamin* Compl. ¶ 1.) Benjamin describes a good portion of the Property as low-lying wetlands subject to seasonal flooding and hydrologically connected to nearby Clackamas River through Lower Deep Creek, a year round creek

---

[1]Both parties acknowledge that later policies included additional or amended language but that the new language is not relevant to the issues before the court.

Page 3- OPINION AND ORDER                                                                 *{SIB}*

on the Property which is a tributary of the Clackamas River, and a series of manmade storm water ditches and pipes. (*Benjamin* Compl. ¶ 9.) He alleges that lead shot and clay pigeon debris generated by Douglas Ridge's activities have landed in the "land, waters and wetlands in and around the [Property]" and that Douglas Ridge has not taken any action to "recover, reclaim or reuse the lead shot." (*Benjamin* Compl. ¶ 10.) Testing of the soil at the Property shows the presence of lead in excess of 25,610 parts per million. (*Benjamin* Compl. ¶ 11.) Benjamin alleges that "this lead has migrated into tributaries of the Clackamas River, is moving vertically downwards towards the underlying aquifer, and poses an[] imminent and substantial threat to human health and the environment." (*Benjamin* Compl. ¶ 11.) Benjamin complains that, despite this activity, Douglas Ridge has failed to obtain a permit to operate a hazardous waste storage and disposal facility. (*Benjamin* Compl. ¶ 14.) Benjamin also asserts that "[i]n fall of 2006, [Douglas Ridge] brought onto the [P]roperty 3,000 square yards of fill material and placed the fill material in wetlands and creeks that are hydrologically connected to the Clackamas River without obtaining a permit from the Oregon Department of State Land's . . . ." (*Benjamin* Compl. ¶ 15.)

Benjamin's Second Claim for Relief realleges and incorporates all of the general allegations and specifically alleges violations of the Resource Conservation and Recovery Act (the "Act"). Benjamin asserts that, for the purposes of the Act, the lead shot and lead contaminated land on the Property is "hazardous waste", Douglas Ridge is a "person", and the Property is a "facility". (*Benjamin* Compl. ¶¶ 27, 28.) He then states that Douglas Ridge has stored and disposed of hazardous waste on the Property since 1958 and, "to this end, [Douglas Ridge] has constructed, operates, and maintains dirt piles specifically designed to capture, store, and immobilize abandoned and discarded lead." (*Benjamin* Compl. ¶ 29.) Benjamin alleges that Douglas Ridge is in violation

Page 4- OPINION AND ORDER                                                                                                    {SIB}

of numerous standards applicable to hazardous treatment, storage, and disposal facilities, including failure to obtain a permit, failure to treat the waste before land dispersal, and:

     a.     Failure to develop a hazardous waste training program for facility personnel.

     b.     Failure to obtain EPA identification number.

     c.     Failure to maintain operations log detailing hazardous waste activities.

     d.     Failure to develop inspection schedule.

     e.     Failure to monitor groundwater near site.

     f.     Failure to contain runoff and control wind dispersal of contaminated soil.

     g.     Failure to develop unsaturated zone monitoring program to detect vertical migration of waste.

     h.     Failure to implement methods to degrade, transform, or immobilize the lead waste incorporated into the soil.

(*Benjamin* Compl. ¶¶ 30-32 (citations to the Code of Federal Regulations omitted).) He then asserts that:

> Plaintiff is entitled to an order under 42 U.S.C. § 6972(a)(1) requiring defendant to abate the violations described above and enjoining the operation of the [Property] until defendant comes into compliance with all applicable laws, regulations and requirements governing the generation, transportation, treatment, storage, and dispersal of hazardous waste.

(*Benjamin* Compl. ¶ 34.)

In support of his Third Claim for Relief for public nuisance, Benjamin again realleges and incorporates all of the general allegations as well as the allegation that the wetlands, drainage ditches and creeks at the Property are waters of the United States and the state of Oregon specifically alleged in paragraph 17 of the Clean Water Act claim and further alleges that Douglas Ridge's placement of fill material in the wetlands and creeks at the Property without first obtaining a permit as required

Page 5- OPINION AND ORDER                                                  {SIB}

by OR. REV. STAT. 196.825, constitutes a nuisance under OR. REV. STAT. 196.855. (*Benjamin* Compl. ¶¶ 37, 38.) Benjamin seeks an order under OR. REV. STAT. 196.870 requiring Douglas Ridge to remove the fill material from the wetlands and creeks at the Property. (*Benjamin* Compl. ¶ 39.)

Douglas Ridge tendered the *Benjamin* Complaint to St. Paul for defense and indemnity under the terms of the Policy. (Chenoweth Decl. Exh. 5.) Originally, St. Paul indicated that it had insufficient information upon which to base is coverage determination and requested additional information. (Chenoweth Decl. Exh. 6.) After receiving and reviewing the requested information, St. Paul rejected the tender concluding that it had no obligation to defend and/or indemnify Douglas Ridge. (Chenoweth Decl. Exh. 9.) Douglas Ridge filed this action for breach of insurance contract seeking a determination that St. Paul has a duty to defend Douglas Ridge and the recovery of reasonable attorney fees and defense costs incurred by Douglas Ridge.

*Legal Standard*

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c) (2008). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. A nonmoving party cannot defeat summary

judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981).

However, deference to the nonmoving party has limits. The nonmoving party must set forth "specific facts showing a *genuine* issue for trial." FED. R. CIV. P. 56(e) (2008) (emphasis added). The "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations marks omitted).

## *Discussion*

An insurer's duty to defend its insured is distinguishable from and is broader than its duty to indemnify under the terms of an insurance policy. While the duty to indemnify is based on facts proven at trial which support a finding of liability, the duty to defend is determined solely by the

factual allegations of the complaint and the language of the insurance policy. *Fireman's Fund Inc. Co. v. Ed Niemi Oil Co., Inc.*, No. CV 03-25-MO, 2005 WL 3050460, at *1 (D. Or. Nov. 9, 2005).

An insurer has a duty to defend an insured only if the allegations of the complaint in the underlying action, without amendment and with ambiguities construed in favor of the insured, could impose liability for conduct covered by the policy. *Marleau v. Truck Ins. Exchange*, 333 Or. 82, 91 (2001); *W. Equities, Inc. v. St. Paul Fire and Marine Ins. Co.*, 184 Or. App. 368, 371 (2002). The duty arises whenever there is a possibility that the policy provides coverage. Thus, if a complaint contains even one claim that could impose liability for conduct covered by the policy, the insurer has a duty to defend. *Id.* at 91; *see also Abrams v. General Star Indem. Co.*, 335 Or. 392, 399-400 (2003).

The insured bears the burden of proving that the terms of the policy could provide coverage for its claims. *Lewis v. Aetna Ins. Co.*, 264 Or. 314, 316 (1973). However, "[a]ny ambiguity in the complaint with respect to whether the allegations could be covered is resolved in favor of the insured." *Ledford v. Gutoski*, 319 Or. 397, 400 (1994). Similarly, if the language of the insurance policy is susceptible to more than one interpretation, "the policy is construed most favorably to the insured." *Sch. Dist. No. 1, Multnomah County v. Mission Ins. Co.*, 58 Or. App. 692, 697 (1982)("*Mission*").

Douglas Ridge contends that the allegations in Benjamin's Second Claim for Relief asserting violations of the Act, and Benjamin's Third Claim for Relief for Public Nuisance, fall within the terms of the Policy and trigger a duty to defend. St. Paul disagrees, arguing that coverage does not exist under either claim because damages, if any, sought under the claims are not "because of" or "on account of" damage to third-party property and the injury to the third-party property was not the

result of an accident.[2] St. Paul also asserts that Benjamin is not seeking covered damages under the Second Claim for Relief and that the allegations relevant to the Third Claim for Relief fall outside of the relevant policy period.

A. Second Claim for Relief - Violations of the Act

    1. Damages.

St. Paul argues that the remedies Benjamin seeks in his claim for violations of the Act – an order requiring Douglas Ridge to abate the violations of the Act and enjoining the operation of the Property until Douglas Ridge complies with the provisions of the Act, and attorney fees and costs – are not property damages covered by the terms of the Policy. Douglas Ridge concedes that the injunction prohibiting Douglas Ridge from operating until it complies with the Act, as well as the attorney fees and costs, are not considered damages under the Policy. However, Douglas Ridge argues that a court order directing Douglas Ridge to abate the violations could take the form of a mandatory injunction requiring Douglas Ridge to incur environmental cleanup costs which do qualify as damages.

The Act provides that this court shall have jurisdiction in citizen suits brought under the Act to restrain any person who has violated the Act and "to order such persons to take such other action as may be necessary, or both . . . ." 42 U.S.C. § 6972(a) (2007). Various federal courts have read this language to authorize a federal court to order a party to clean up a contaminated site. *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 484 (1996)("Under a plain reading of this remedial scheme, a

---

[2]St. Paul concedes that the *Benjamin* Complaint qualifies as a "suit" under the terms of the Policy, that the allegations arise out of "hazards" as defined in the Policy, and that the *Benjamin* Complaint alleges that the "wetlands, drainage ditches, and creeks" at the Property are "waters of the United States" and the State of Oregon. (Def.'s Combined Mem. at 9-10.)

Page 9- OPINION AND ORDER                                                                        {SIB}

private citizen suing under § 6972(a)(1)(B) could seek a mandatory injunction, *i.e.*, one that orders a responsible party to 'take action' by attending to the cleanup and proper disposal of toxic waste ...."); *Interfaith Comty. Org. v. Honeywell Int'l, Inc.*, 399 F.3d 248, 264-68 (3rd Cir. 2005)(Third Circuit upheld district court's mandatory injunction requiring defendant to clean up its site through excavation and removal of the contaminated waste finding that it was consistent with the national policy to "minimize the present and future threat to human health and the environment" established by the Act); *College Park Holdings, LLC, v. Racetrac Petroleum, Inc.*, 239 F. Supp. 2d 1334, 1349-50 (N.D. Ga. 2002)(court granted injunctive relief requiring defendant to engage in testing, prepare a corrective action plan and remediate the contamination in the property and groundwater); *Wilson v. Amoco Corp.* 989 F. Supp. 1159, 1171-72 (D. Wyo. 1998)(court issued mandatory injunction requiring defendant to erect barriers and develop testing plans under the broad equitable powers given the court under the Act); *Westfarm Associates Ltd. P'ship v. Int'l Fabricare Inst.*, 22 Envtl. L. Rep. 21,350 (D. Md. 1992)(court found that it had jurisdiction to enforce the provisions of the Act to the full extent of its legal and equitable powers, which could include an order to clean up the contaminated land). Both the Ninth Circuit and the Oregon courts recognize that environmental cleanup costs qualify as property damages as defined in most insurance policies. *Port of Portland v. Water Quality Ins. Syndicate*, 796 F.2d 1188, 1194 (9th Cir. 1986)("We agree with the district court that the "reasonable, enlightened view" that the Oregon Supreme Court would adopt would be that the discharge of pollution into water causes damage to tangible property and hence cleanup costs are recoverable under a property damage clause."); *Lane Elec. Coop. Inc. v. Federated Rural Elec. Ins. Corp.*, 114 Or. App. 156, 160-61 (1992)("Ground water is tangible property. When it is contaminated, its quality is injured physically and is "damaged." We hold that, under the plain

meaning of defendant's policy, the contamination of ground water was "property damage.")

The duty to defend arises when there is a possibility that a claim may be covered by the insurance policy. Under the Act, the district court has the authority to order Douglas Ridge to clean up or remediate any contamination for which it is responsible. Benjamin alleges that Douglas Ridge's actions have contaminated the land, waters, and wetlands in and around the Property and are currently adversely affecting Benjamin's ability to use and enjoy the Clackamas River, and that the contamination of the groundwater poses an imminent and substantial threat to human health and environment. In light of the fact that the Act is intended to minimize both present and future threat to human health, the court finds it possible that the district court will order Douglas Ridge to take action to clean up the existing contamination. Consequently, it is possible that Benjamin's claim for violation of the Act will cause Douglas Ridge to incur cleanup costs, which costs qualify as property damage under the terms of the Policy.

This conclusion is further supported by Benjamin's specific request that the district court issue an order requiring Douglas Ridge to abate the violations of the Act. The term "abate" means "to reduce in amount, degree, or intensity; lessen." *The American Heritage Dictionary of English Language* 2 (4th ed. 2000). While St. Paul argues that Benjamin is asking the district court to require Douglas Ridge to abate the violations, *i.e.*, obtain the necessary permit and identification number, maintain logs, develop a training program, all of which is prospective relief, it could also be interpreted as a request that the district court require Douglas Ridge to abate the contamination. Viewing the allegations of the *Benjamin* Complaint in favor of the insured, the court finds that Benjamin could be seeking remediation of the contaminated soil and water located on the Property, which, if ordered, would necessarily constitute property damage in the form of cleanup costs covered

by the Policy.

    2. Third Party Property.

St. Paul argues that even if the court finds that the allegations of the *Benjamin* Complaint could result in property damage covered by the Policy, such damage is limited to property owned, occupied by or rented to Douglas Ridge, and is, therefore, excluded under the express terms of the Policy. St. Paul asserts that the Second Claim for Relief is based solely on Douglas Ridge's use of the Property, which it owns, as a hazardous waste facility in violation of the Act. Douglas Ridge contends that Benjamin's allegations supporting his claim under the Act are based, at least in part, on Douglas Ridge's contamination of third-party property, namely the wetlands, drainage ditches, and creek located on the Property, which are tributaries of the Clackamas River and belong to the public.

Benjamin incorporates by reference into his Second Claim for Relief a number of allegations relating to the contamination of the water and wetlands at and around the Property. Specifically, he incorporates his allegation that Douglas Ridge's violation of the Act has adversely affect his "ability to use and enjoy the Clackamas River for swimming, fishing and hunting." (*Benjamin* Compl. ¶ 6.) Additionally, he incorporates his allegations that lead shot has landed in the waters and wetland located on the Property, has migrated into the tributaries of the Clackamas River, is moving vertically downwards towards the underlying aquifer, and poses an imminent and substantial threat to human health and the environment. (*Benjamin* Compl. ¶¶ 10, 11.) Benjamin also alleges violations of the Act relating specifically to water, including failure to monitor groundwater near the site and failure to develop an unsaturated zone monitoring program to detect vertical migration of waste. (*Benjamin* Compl. ¶ 31.) It is clear that Benjamin has alleged contamination of water,

wetlands, and tributaries in support of his claim under the Act.

A number of courts have held that similar statements adequately allege damage to third-party property supporting a finding of either a duty to defend or insurance coverage. In *GE Prop. & Cas. Ins. Co. v. Portland Comty. Coll.*, No. CV 04-727-HU, 2005 WL 2044315, at *6 (D. Or. Aug. 24, 2005), Judge Hubel of this court found that references to the possibility of groundwater contamination, in addition to soil contamination, were sufficient allegations of damage to third-party property to trigger a duty to defend. Similarly, in *Fireman's Fund Ins. Co. v. Ed Niemi Oil Co., Inc.*, No. CV 03-25-MO, 2005 WL 3050460, at *8 (D. Or. Nov. 9, 2005), Judge Mosman found that "where there are allegations of possible damage to the groundwater or other publicly owned water sources, the owned-property exclusion does not apply." An Oregon appellate court has also held that contamination of groundwater adequately alleges damage to a third-party property, relying on statutory provisions that all water within the state of Oregon, including the right to control such water, belongs to the public. *Lane Elec.*, 114 Or. App. at 161.

Benjamin's allegations go far beyond a reference to a possibility of groundwater contamination. Benjamin specifically alleges that Douglas Ridge's violations of the Act have affected his ability to use and enjoy the Clackamas River, that the lead shot has contaminated water and is moving towards the underlying aquifer, and that Douglas Ridge has violated the Act by failing to adequately monitor the effect of the presence of lead shot on the groundwater near the Property. The water and wetlands located on the Property, and allegedly contaminated as a result of the lead shot abandoned on the Property, are owned by the public, not Douglas Ridge. It is possible that the district court will consider the alleged contamination of the water and wetlands to be relevant to Benjamin's claims under the Act, the purpose of which is to minimize the present and future threat

to human health and the environment. Accordingly, any cleanup costs incurred by Douglas Ridge as a result of the alleged violations of the Act could, at least in part, be attributable to the current or imminent contamination of water, wetlands, and groundwater. In that scenario, this claim would not be excluded as damage to property owned, occupied by, or rented to Douglas Ridge.

3. Accident.

Coverage under the Policy is limited to damages caused by accident. St. Paul argues that because Douglas Ridge intended its members to shoot lead shot onto the Property, the resulting contamination must be considered intentional, rather than accidental. Alternatively, St. Paul argues that even if Douglas Ridge did not intend to contaminate the Property and water or wetlands located thereon, such contamination was so certain to occur that Douglas Ridge should be deemed to have intended it.

The duty to defend is governed solely by the allegations of the complaint. When considering those allegations, the court must take into account not only all of the claims specifically alleged, but also all claims that could be supported by the allegations. In cases involving allegations of intentional conduct, the court will find the duty to defend exists if evidence of accidental conduct would also be admissible and would support the underlying claim.

The Oregon Supreme Court has specifically addressed the question of whether an insurer has "a duty to defend an insured under an insurance policy with an 'intentional acts' exclusion if the complaint against the insured alleges a subjective intent to harm but the claim could be proven though unintentional conduct" on certification from the Ninth Circuit in *Abrams v. General Star Indem. Co.*, 335 Or. 392, 394 (2003). In *Abrams*, the underlying complaint stated a conversion claim supported by allegations of intent to cause harm. The state court acknowledged that existing case

law clearly established that "an insurance policy with an intentional acts exclusion does not provide coverage for acts done with the subjective intent to cause harm." *Id.* It reviewed other Oregon cases addressing the issue, such as *Ferguson v. Birmingham Fire Ins.*, 254 Or. 496, 507 (1969), in which the court held that an action for trespass alleging a willful entry to support a punitive damage claim could also support a "lesser included offense" of non-willful entry for ordinary damages thus triggering the duty to defend, and *Ledford v. Gutoski*, 319 Or. 397, 402-03 (1994), where the court found that a malicious prosecution complaint alleged only intentional acts and harm and did not obligate the insurer to defend the lawsuit. The court ultimately created the following standard to answer the duty to defend question when the complaint alleges conduct that is excluded under the insurance policy:

> First, the court must determine whether the complaint contains allegations of *covered* conduct. If it does, as the trespass complaint did in *Ferguson*, then the insurer has a duty to defend, even if the complaint also includes allegations of excluded conduct. If the complaint does not contain allegations of covered conduct, as was the case with the malicious prosecution complaint before the court in *Ledford*, then the insurer has no duty to defend.

*Id.* at 400. The court held that because the allegations of the intentional conversion claim also included allegations of ordinary conversion, which was covered under the terms of the insurance policy at issue, the insurer had a duty to defend. *Id.* This standard is further supported by the reasoning of the Oregon appellate court in *Mission*, wherein the court distinguished between an employment discrimination claim based on disparate treatment, in which proof of discriminatory motive is critical, and a claim based on disparate impact, which may be based on facially neutral employment practices that treat a group of protected employees more harshly but do not required a discriminatory motive. The court found that the former claim did not trigger the duty to defend

while the latter did. *Mission*, 58 Or. App. at 701.

First, the court notes that the *Benjamin* Complaint contains no allegations of intentional conduct or subjective intent to cause harm. Benjamin only alleges that lead has been discharged, disposed of, and abandoned on the Property and that engaging in such conduct without a permit and in accordance with specified standards violates the Act. Consequently, the *Benjamin* Complaint on its face does not allege an intent to harm and does not restrict Douglas Ridge's possible liability to intentional acts. Second, even assuming that the *Benjamin* Complaint does allege intentional conduct, Benjamin's claim for violation of the Act would be equally supported by unintentional conduct. The Act does not limit conduct actionable under its provisions to intentional conduct. Accordingly, the claim sufficiently alleges accidental conduct covered by the terms of the Policy.

The court finds that Benjamin's claim for violations of the Act, viewing any ambiguities in the *Benjamin* Complaint or the Policy in the light most favorable to Douglas Ridge, could support a claim for damage to third-party property based on the accidental, or unintentional, conduct of Douglas Ridge. St. Paul's duty to defend Douglas Ridge is triggered by the allegations of the *Benjamin* Complaint as set forth in the Second Claim for Relief.

B. Third Claim for Relief - Public Nuisance

1. Allegations Supporting Placement of Fill Material on Property.

Douglas Ridge asserts that St. Paul has a duty to defend it based on Benjamin's Third Claim for Relief for public nuisance. St. Paul argues that the public nuisance claim is based solely on the delivery and spreading of 3,000 square yards of fill material on the Property in the fall of 2006. Because Douglas Ridge no longer insured the Property through St. Paul after 1980, the 2006 event would fall outside the coverage period. Douglas Ridge contends the allegations of discharge,

Page 16- OPINION AND ORDER                                                                                          {SIB}

disposal and abandonment of both lead shot and clay pigeon debris on the Property during the coverage period, incorporated by reference into the public nuisance claim, also support the claim and creates coverage under the Policy.

In his Third Claim for Relief for public nuisance, Benjamin incorporates all of the general allegations which include assertions that over the years, Douglas Ridge has discharged, disposed of and abandoned lead and clay pigeon debris in water and wetlands in and around the Property, and that in the fall of 2006, Douglas Ridge brought fill material onto the Property and placed it in the water and wetlands. (*Benjamin* Compl. ¶¶ 1, 10, 15.) Benjamin then specifically alleges that Douglas Ridge has placed fill material in the wetlands and creeks on the Property without permit in violation of OR. REV. STAT. 196.855. Benjamin asks the district court to order Douglas Ridge to remove the fill material from the Property.

The court agrees that the logical support for the public nuisance claim are those allegations found in paragraph 15, which relate to Douglas Ridge's placement of fill material in the water and wetlands in the fall of 2006. However, the court is not to limit the allegations of the underlying complaint to those that are most logical or reasonable. Instead, the court must view the *Benjamin* Complaint as stating a claim under all possible scenarios. If the allegations that Douglas Ridge discharged, disposed of and abandoned lead and clay pigeon debris in the wetland and waters of the Property may support a claim for public nuisance, the court must consider the *Benjamin* Complaint as stating such a claim for the purposes of determining the duty to defend.

Under the relevant statute, a party is liable for a public nuisance when it removes material from the beds or banks or fills any waters of the state without a permit or contrary to the conditions set out in the permit or a wetland conservation plan. OR. REV. STAT. 196.855 (2007). "Fill" is

Page 17- OPINION AND ORDER                                                                                    {SIB}

defined as the "total of deposits by artificial means equal to or exceeding 50 cubic yards or more of material at one location in any waters of this state." OR. REV. STAT. 196.800(3) (2007). The term "material" means "rock, gravel, sand, silt and other inorganic substance removed from waters of this state and any materials, organic or inorganic, used to fill waters of this state." OR. REV. STAT. 196.800(7) (2007). Both the lead shot and the clay pigeon debris could fall within the definition of material. While the *Benjamin* Complaint does not specifically allege the amount of lead shot or clay pigeon debris deposited in the waters or wetlands located on the Property, it is possible that more than 50 cubic years have been deposited on the Property and its wetlands over the more than 20-year period St. Paul was insuring the Property.

The Third Claim for Relief in the *Benjamin* Complaint can be construed to assert a claim for public nuisance under OR. REV. STAT. 196.855 based on the deposit of lead shot and clay pigeon debris in the waters and wetlands located on the Property. Accordingly, the court finds that such a claim is alleged and triggers a duty to defend the underlying action.

    2. Third Party Property Damage.

As with the Second Claim for Relief, St. Paul asserts that any damages incurred by Douglas Ridge under the public nuisance claim are not because of an injury to third-party property. The public nuisance claim does not lie in the absence of actions affecting waters of the state. The purpose of the statutes relevant to the public nuisance claim is the "protection, conservation and best use of the water resources of this state" and the concern that "[u]nregulated filling in the waters of this state for any purpose, may result in the interfering with or injuring public navigation, fishery and recreational uses of the water." OR. REV. STAT. 196.805(1). An order to remove the material deposited in the water and wetlands on the Property would cause Douglas Ridge to incur costs to

remedy existing or possible injury to the waterways and the use of the waterways by the public, as well as to habitats and spawning areas for fish. The court finds no reasons to treat these damages any differently than costs incurred to remedy possible contamination to the same waterways. The *Benjamin* Complaint asserts a claim for damages to third-party property in the Third Claim for Relief for public nuisance.

3. Accident.

The *Benjamin* Complaint alleges that Douglas Ridge placed fill material on the Property. Based on these allegations, St. Paul argues that Douglas Ridge's "placement" of fill material in the water and wetlands of the Property is an intentional act which is excluded under the terms of the Policy. The allegations relevant to the disposal of lead shot and clay pigeon does not include claims of intentional conduct. Douglas Ridge could be held liable for removal costs under the statutes whether it intentionally or negligently deposited fill material in the water or wetlands on the Property. The allegations in the Third Claim for Relief for public nuisance support a claim based on both negligent and intentional conduct, thereby triggering the duty to defendant under the Policy.

*Conclusion*

Douglas Ridge's motion (#31) for partial summary judgment is GRANTED. St. Paul, as Douglas Ridge's liability insurer, has a duty to defend Douglas Ridge against the claims asserted by Benjamin in the case of *Benjamin v. Douglas Ridge Rifle Club*, No. 3:07-CV-1144-HA (D. Or.

/ / / / /

/ / / / /

/ / / / /

/ / / / /

2007), from the date of tender beginning August 7, 2007. St. Paul's motion (#37) for summary judgment is DENIED.

DATED this 8th day of January, 2010.

/s/ John V. Acosta
JOHN V. ACOSTA
United States Magistrate Judge